IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Doris W.,[1] <br><br> **Plaintiff,** <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> **Defendant.** | Case No. 19 C 00067 <br><br> Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

Plaintiff Doris W. brings this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

On July 8, 2015, Plaintiff applied for SSI, alleging that she became disabled on February 1, 2010 because of osteoarthritis, bipolar disorder, schizophrenia, and depression. (R. at 78–79). Her claims were denied initially on September 19, 2015,

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul as the named defendant.

and upon reconsideration on January 4, 2016, after which Plaintiff timely requested a hearing. (*Id.* at 78, 103, 132). Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ) on July 19, 2017. (*Id.* at 38–77). The ALJ also heard testimony from Kathleen M. Doehla, a vocational expert (VE). (*Id.*).

The ALJ issued a decision denying benefits on November 27, 2017. (R. at 16–37). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since June 8, 2015, the application date. (*Id.* at 18). At step two, the ALJ found that Plaintiff's osteoarthritis, obesity, schizoaffective disorder, depressive disorder, post-traumatic stress disorder, and anxiety disorder were severe impairments. (*Id.* at 19). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 20).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. §416.967(b) except with the following limitations:

> [N]o climbing ladders, ropes, and scaffolds, she can occasionally climb stairs and ramps, occasional balancing, kneeling, crouching, crawling, and kneeling. She retains the capacity to understand, remember, and execute simple routine tasks in a low stress environment defined as having few if any changes in the work setting and few if any simple work related decisions; all instructions should be given in a short simple demonstration. The claimant should have no interaction with the public and only occasional interaction with coworkers. She will need a ten-

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which is the most a claimant can do despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *1–2 (July 2, 1996).

2

> minute break every two hours, which can be accommodated by routine breaks and lunch.

(R. at 23). At step four, the ALJ noted that Plaintiff has no past relevant work. (*Id.* at 31). The ALJ found at step five that jobs existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner polisher, housekeeper, and lathe operator. (*Id.* at 32).

On November 2, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. DISCUSSION

The Court will uphold the ALJ's decision if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). In reviewing the ALJ's decision, the Court may not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the" ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal quotation omitted). Although this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and his or her conclusion. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (internal quotation marks omitted).

Plaintiff makes a number of arguments challenging the ALJ's decision. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's arguments that the ALJ erred by failing to properly weigh the opinion evidence of psychiatrist, Steve J. Herrin, M.D.[4]

The ALJ must evaluate "every medical opinion" in the record and assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c). If a treating physician's opinion is not afforded controlling weight,[5] the ALJ evaluates all of the medical opinions according to the following factors: the length, nature, and extent of the treatment relationship; the frequency of examination; the consistency and supportability of the physician's opinion; and the physician's specialty. *Id.*

An ALJ generally "give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). An ALJ "can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

---

[4] Because the Court remands for these reasons, it need not address Plaintiff's other arguments at this time.

[5] The Social Security Administration has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

As an initial matter, the ALJ fails to specify whether she considered Dr. Herrin to be a treating physician or an examining physician. Although the Commissioner describes Dr. Herrin as a "treating psychiatrist," (dkt. 26 at 7), a review of the records indicates that Dr. Herrin wrote his opinion based on his first examination of Plaintiff and a review of the longitudinal records. This Court will treat Dr. Herrin as an examining physician and not a treating physician under 20 C.F.R. § 404.1527(a)(2), because he did not have a longitudinal relationship with the Plaintiff at the time of his evaluation.

Dr. Herrin completed a Mental Impairment Questionnaire on July 27, 2017 after examining Plaintiff and reviewing Plaintiff's longitudinal treatment records at John H. Stroger Hospital from December 15, 2014 to May 3, 2017. (R. at 463–65). Dr. Herrin diagnosed Plaintiff with Schizoaffective Disorder, Post Traumatic Stress Disorder, and a history of learning problems. (*Id.* at 463). He identified the following signs and symptoms associated with these diagnoses: sleep disturbance, emotional lability, recurrent panic attacks, hostility and irritability, persistent irrational fears, perceptual disturbances, difficulty thinking or concentration, social withdrawal or isolation, delusions or hallucinations, suicidal ideation and suicide attempts years ago, intrusive recollections of a traumatic experience and paranoia or inappropriate suspiciousness." (*Id.*). He described Plaintiff as having "chronic symptoms with paranoia and hallucinations," based on his "clinical findings, including the results of mental status examination." (*Id.*). The doctor indicated that Plaintiff has "some improvement" with medications, but she is still symptomatic

5

and that Plaintiff's prognosis is "fair if [she] stays on medication" but she will "unlikely be able to work." (*Id.*). He concluded that Plaintiff has moderate limitations in: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, being punctual with customary tolerances; sustaining an ordinary routine without special supervision; making simple work-related decisions; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and setting realistic goals or making plans independently of others. (*Id.*). Additionally, he concluded that Plaintiff has marked limitations in working in coordination with or proximity to others without being unduly distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions, and responding appropriately to criticism from supervisions. (*Id.*).

The ALJ gave "little weight" to the opinion of Dr. Herrin because: 1) "there is no mental status exam from Dr. Herrin to support his opinion"; and (2) the opinion is "not consistent with the other evidence in the record." (R. at 30). There are several errors in the ALJ's reasoning, warranting remand on this issue.

The ALJ improperly discounted Dr. Herrin's opinion because he "did not conduct a mental status examination to support his opinion." (R. at 30). This reason is factually inaccurate. In the Mental Health Questionnaire, Dr. Herrin described his

6

"clinical findings, *including results of mental status examination*, which demonstrate the severity of Plaintiff's mental impairment and symptoms." (*Id.*) (emphasis added). Accordingly, this rationale by the ALJ is unavailing. *See Scrogham v. Colvin*, 765 F.3d 685, 696–98 (7th Cir. 2014) (finding error when the ALJ used "faulty logic" in deeming evidence as inconsistent with a physician opinion).

Next, the ALJ gave Dr. Herrin's opinion "little weight" because it was "not consistent with the other evidence in the record." (R. at 30). Again, the ALJ provided faulty reasoning in each of his examples of purported inconsistencies.

First, the ALJ explained, "the claimant's mental exams since April 2015 indicate the claimant's mental impairments are stable with medication." (R. at 30). But "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Indeed, "a person can suffer considerable limitations preventing gainful employment and yet still be considered 'stable' because her condition is not volatile." *Marks v. Colvin*, 2014 WL 4182636 at *10, n.14 (N.D. Ill. Aug. 21, 2014) (citing *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). The ALJ must connect how Plaintiff's stability on medications restored her ability to engage in gainful employment. *Murphy*, 759 F.3d at 819 ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"). The ALJ failed to do so here.

7

Additionally, the ALJ is "not permitted to 'cherry-pick' from . . . mixed results to support a denial of benefits." *Scott*, 647 F.3d at 739–740. Although the ALJ cited an August 17, 2015 progress note indicating that the Plaintiff was "stable on medications," (r. at 378), the mental status examination in that same progress note indicated that Plaintiff's appearance was "dirty, unkempt, malodorous, eccentric, many of her teeth are absent," that she was "fidgeting, rocking back and forward," that she had constricted and blunted affect with depressed mood; that her thought processes were concrete with loose associations, and that she had passive thoughts of death. (R. at 378). Other mental status examinations cited by the ALJ reveal the same "cherry-picking." *See* (R. at 292, noting that although Plaintiff was complying with medication and "improved," she exhibited psychomotor retardation, depressed mood, apathetic and blunted affect, hallucinations, poor concentration, and passive thought of death); (*Id.* at 284) (indicating that Plaintiff was "stable on medication" yet mental status examination revealed her to be unkempt and having concrete thought processes and hallucinations). This is impermissible error, requiring remand. *See Meuser*, 838 F.3d at 912 ("An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence."); *Scrogham*, 765 F.3d at 697 (finding error when the ALJ "neither considered nor explained her decision not to consider the rest of copious records, which, upon closer review, might indicate that [claimant] was substantially more limited . . . than the ALJ initially concluded.").

8

Similarly, to support her conclusions, the ALJ indicated that "the record shows the auditory hallucinations are controlled by medication and the psychiatrists in the record all noted in their mental status examinations that she did not appear to respond to stimuli." (R. at 30). But failure to respond to internal stimuli does not mean the patient is asymptomatic. The mental status examinations cited by the ALJ reveal the presence of hallucinations even while on medications, (*see* r. at 284, 292, 378, 385, 394, 418, 422, 427–28, 431), as do mental status examinations omitted from the ALJ's analysis, (*see id.* at 388, 390–91). This is error. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (finding that when an ALJ ignores an entire line of contrary evidence, "it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence").

Likewise, the ALJ also erroneously reasoned that Dr. Herrin's conclusions were inconsistent with the mental status examinations of record which "show her thought process was logical, coherent, organized, and *concrete*." (R. at 30). (emphasis added). Concrete thought process can be associated with schizophrenia and learning difficulties. *See* https://www.ncbi.nlm.nih.gov/books/NBK546682/ (last visited July 14, 2020) ("Literal interpretations and answers indicate concrete thinking, which is seen in many psychiatric disorders but also some intellectual disabilities and neurocognitive disorder."). The mental status examinations cited by the ALJ indicating "concrete" thought processes undermine rather than support the ALJ's conclusion. (*See e.g.* R. at 284 (Plaintiff was unkempt, exhibiting "concrete" thought processes and hallucinations); R. at 378 (Plaintiff exhibited "concrete"

thought processes with loose associations and passive thoughts of death). The ALJ's apparent misunderstanding of the significance of "concrete" thought processes in a mental examination is erroneous. *See Meuser v. Colvin*, 838 F.3d 905, 911–12 (7th Cir. 2016) ("The ALJ's misunderstanding of the symptoms of schizophrenia was compounded . . . when the ALJ ignored several notations that [claimant] had . . . symptoms of schizophrenia. An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence."); *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) ("Where [an ALJ] rejects a treating physician's opinion because it does not align with the [ALJ's] own incorrect interpretation of the medical evidence, that decision is not supported by substantial evidence.") (internal quotations omitted).

In sum, the Court finds that the ALJ provided faulty reasoning when discounting Dr. Herrin's conclusion that although Plaintiff is stable and has shown "some improvement" with medications, she is still symptomatic, including, *inter alia*, auditory hallucinations and paranoid delusions, an impaired ability to interact with others due to paranoia, hallucinations, irritability and quick temper. (R. at 463). The ALJ does not confront these continued symptoms noted by Dr. Herrin and throughout the records, nor does she explain how Plaintiff is able to work despite these continued symptoms. The ALJ's failure to give a "sound explanation" for discounting the opinion of Dr. Herrin requires remand. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's request to remand for additional proceedings [18] is **GRANTED**, and the Commissioner's motion for summary judgment [25] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: August 6, 2020

*/s/ Beth W. Jantz*

BETH W. JANTZ
United States Magistrate Judge